# CIVIL COVER SHEET

JS 44   (Rev. 3/99)

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

JOHN ANSTETT, AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF PAUL WOOLEY, DECEASED

## DEFENDANTS

THE CITY OF ALLEN, ALLEN, TEXAS, et al.

**(b)** County of Residence of First Listed Plaintiff  Dallas County, Texas
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Collin County, Texas
(IN U.S. PLAINTIFF CASES ONLY)

NOTE.  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED

RECEIVED

MAY 1 1 04

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

LYNCH LAW FIRM
Jeffrey S. Lynch
13740 Midway Road Suite 702
Dallas, Texas 75244

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                   and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☒ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury | ☐ 650 Airline Regs | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Product Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☒ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | | | | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting | | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | **FEDERAL TAX SUITS** | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 900 Appeal of Fee |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | | or Defendant) | Determination Under Equal |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 871 IRS—Third Party | Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | 26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | Security Act | | State Statutes |
| | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause.
Do not cite jurisdictional statutes unless diversity.)

Title 42 §1983 Violation of Civil Rights

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  $27,260,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY   (See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE  April 26, 2004

SIGNATURE OF ATTORNEY OF RECORD
Jeffrey S. Lynch   SBA# 12727500

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse (Rev. 12/96)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

### Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b.) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a) Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY 11 2004

CLERK, U.S. DISTRICT COURT
by _____
          Deputy

| | | |
|---|---|---|
| JOHN ANSTETT, AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF PAUL WOOLEY, DECEASED,<br><br>PLAINTIFF,<br><br>VS.<br><br>THE CITY OF ALLEN, ALLEN, TEXAS, A MUNICIPALITY AND ITS DIVISION AND/OR DEPARTMENT THE ALLEN POLICE DEPARTMENT, WILLIAM S. RUSHING, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CHIEF OF POLICE, THE CITY OF MCKINNEY, MCKINNEY TEXAS, A MUNICIPALITY AND ITS DIVISION AND/OR DEPARTMENT THE MCKINNEY POLICE DEPARTMENT, DOUGLAS A. KOWALSKI, INDIVIDUALLY AND IN HIS OFFICIAL CAPCITY AS CHIEF OF POLICE, RANDALL R. VANDERTUIN, INDIVIDUALLY AND IN HIS OFFICAL CAPACITY AS DETECTIVE AND EMPLOYEE, THE CITY OF AMARILLO, TEXAS, A MUNICIPALITY AND ITS DIVISION AND/OR DEPARTMENT THE AMARILLO POLICE DEPARTMENT, JERRY H. NEAL, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CHIEF OF POLICE, COLLIN COUNTY, TEXAS, A GOVERNMENTAL ENTITY AND ITS DIVISION AND/OR DEPARTMENT THE COLLIN COUNTY SHERIFF'S DEPARTMENT, TERRY G. BOX, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS COUNTY SHERIFF, JANE DOE COLLIN COUNTY JAILERS, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITY AS COLLIN COUNTY JAILERS, JANE DOE COLLIN COUNTY NURSES, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITY AS COLLIN COUNTY NURSES, LA QUINTA MOTELS, INC., NORTHWEST TEXAS HOSPITAL, INC. AND RUBEN V. MENDOZA, M.D.,<br><br>DEFENDANTS. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.<br><br>3-04CV-1015L<br><br><br>JURY TRIAL DEMANDED |

---

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE:**

**NOW INTO COURT COMES** John Anstett, the Independent Administrator of the Estate of Paul Wooley, Deceased, and Plaintiff in the above styled and numbered cause of action, and files herewith his Original Complaint complaining of and against The City of Allen, Texas and William S. Rushing, the Chief of Police of the Allen Police Department, (collectively referred to as the "Allen Defendants"), The City of McKinney, Texas and its division and/or department the McKinney Police Department, Douglas A. Kowalski, Chief of Police of the McKinney Police Department, Randall R. Vandertuin, a detective and an employee of the McKinney Police Department, (collectively referred to as the "McKinney Defendants"), The City of Amarillo, Texas and it division and/or department the Amarillo Police Department, Amarillo, Texas, Jerry H. Neal, Chief of Police of the Amarillo Police Department (collectively the "Amarillo Defendants"), Collin County, Texas and its division and/or department the Collin County Sheriff's Department, Terry G. Box, Collin County Sheriff, Jane Doe Collin County Jailers ("Jailers"), Jane Doe Collin County Nurses ("Nurses"), (collectively the "County Defendants"), La Quinta Motels, Inc. ("Motel"), Northwest Texas Hospital, Inc. and Ruben V. Mendoza, M.D., a doctor at the Hospital, (collectively referred to as the "Hospital Defendants"), and for cause of action would show unto the Court and the Jury as follows:

### I.

### PARTIES

1.      John Anstett ("Anstett"), the Independent Administrator of the Estate of Paul Wooley ("Wooley"), Deceased, is a resident of Dallas County, Texas.  The Wooley Estate is

---

being administered in Dallas County, Texas, and Plaintiff Anstett is fully authorized to prosecute the claims set forth herein.

2.      Defendant, The City of Allen, Texas, a municipality and its division and/or department the Allen Police Department ("Allen PD") is located in Collin County, Texas. Defendant Allen PD may be served with summons and complaint by serving its City Manager, Peter H. Vargas, at City Hall, 305 Century Parkway, Allen, Texas 75013, the designated agent for service of process.

3.      Defendant, Bill Rushing ("Rushing") is the Chief of Police of the Allen PD, a division and/or department of the municipality located in Collin County, Texas. Defendant Rushing may be served with summons and complaint at City Hall, 305 Century Parkway, Allen, Texas 75013.

4.      Defendant, The City of McKinney, Texas, a municipality and its division and/or department the McKinney Police Department ("McKinney PD") is located in Collin County, Texas. Defendant McKinney PD may be served with summons and complaint by serving its City Manager, Larry Robinson, at 130 S. Chestnut, McKinney, Texas 75069, the designated agent for service of process.

5.      Defendant, Douglas A. Kowalski ("Kowalski") is the Chief of Police of the McKinney PD, a division and/or department of the municipality located in Collin County, Texas. Defendant Kowalski may be served with summons and complaint at 130 S. Chestnut, McKinney, Texas 75069.

6.      Defendant, Randall R. Vandertuin ("Vandertuin") is a detective and an employee of McKinney PD, a division and/or department of the municipality located in Collin County,

Texas.  Defendant Vandertuin may be served with summons and complaint at 130 S. Chestnut, McKinney, Texas 75069, the designated agent for service of process.

7.      Defendant, The City of Amarillo, Texas, a municipality and its division and/or department the Amarillo Police Department ("Amarillo PD") is located in Potter County, Texas. Defendant Amarillo PD may be served with summons and complaint by serving its City Manager, John Ward, at 509 S.E. Seventh Avenue, Amarillo, Texas 75105.

8.      Defendant, Jerry H. Neal ("Neal") is the Chief of Police of the Amarillo PD, a division or department of the municipality located in Potter County, Texas.  Defendant Neal may be served with summons and complaint at 509 S.E. Seventh Avenue, Amarillo, Texas 75105.

9.      Defendant, Collin County, Texas, a governmental entity and its division or department the Collin County Sheriff's Department ("Collin County").  Defendant Collin County may be served with summons and complaint by Ron Harris, Collin County Judge, at 626 Courthouse, 210 S. McDonald Street, McKinney, Texas 75069, the designated agent for service of process.

10.     Defendant, Terry G. Box ("Box") is the Collin County Sheriff, a division and/or department of Collin County, Texas.  Defendant Box may be served with summons and complaint at 4300 Community Avenue, McKinney, Texas 75071.

11.     Defendants, Jane Doe Collin County Jailers ("Jailers") are employees of Defendant Collin County.  Defendant Jailers may be served with summons and complaint by serving Ron Harris, Collin County Judge, at 626 Courthouse, 210 S. McDonald Street, McKinney, Texas 75069, the designated agent for service of process.

12.     Defendants, Jane Doe Collin County Nurses ("Nurses") are employees of Defendant Collin County.  Defendant Nurses may be served with summons and complaint by

serving Ron Harris, Collin County Judge, at 626 Courthouse, 210 S. McDonald Street, McKinney, Texas 75069, the designated agent for service of process.

13.     La Quinta Motels, Inc. ("Motel") is a corporation doing business in the State of Texas. Defendant Motel may be served with summons and complaint at 909 Hidden Ridge, Suite 600 Irving, Texas 75038.

14.     Northwest Texas Hospital, Inc. ("Hospital") is a corporation doing business in the State of Texas. Defendant Hospital may be served with summons and complaint at 1501 S Coulter St, Amarillo, Texas 79106. Defendant Hospital is a subsidiary of Health Services, Inc., with its principal place of business at Universal Corporate Center 367 S. Gulph Rd., King Prussia, Pennsylvania 19406-0958, the designated agent for service of process.

15.     Ruben V. Mendoza, M.D. ("Mendoza") is a resident of Amarillo and a medical doctor practicing at the Hospital. Defendant Mendoza may be served with summons and complaint at 6900 I-40 W. Suite 275, Amarillo, Texas 79106.

## II.

## VENUE

16.     Venue is proper pursuant to 28 U.S.C. §1391 in the Northern District of Texas because the Plaintiff is a resident of the Northern District of Texas. Defendants Motel, Hospital and Mendoza are residents of the Northern District of Texas. The arrest of Wooley occurred in the Northern District of Texas. Additional acts complained of herein occurred in the Northern District of Texas.

---

## III.

### JURISDICTION

17.     The jurisdiction of this Court is based upon federal questions that must be decided

by a Federal tribunal pursuant to 28 U.S.C. §1331 and §1334 (1), (3), (4) and 42 U.S.C. §1983

and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.   The

amounts in controversy exceed $75,000.00, exclusive of interest and costs.   Plaintiff further

invokes the pendent jurisdiction of this Court to hear and decide claims arising under state law.

18.     Additionally,   this   Court   has   jurisdiction   over   McKinney   PD,   Kowalski,

Vandertuin, Allen PD, Rushing, Collin County, Box, Jailers, Nurses, Amarillo PD, and Neal

because:

> A.     Claims brought under 42 U.S.C. §1983 are not protected by absolute governmental immunity;

> B.     Municipal defendants do not have qualified immunity.   Each of said Defendants has expressly waived immunity from suit;

> C.     Plaintiffs have complied with the presentment requirements for waiver and liability promulgated by each of the said Defendants and has been denied claims for damages; and

> D.     Each of the Defendants is liable for damages pursuant to Tex. Civ. Prac. & Rem. Code §§101.021, 101.0215 and 101.022 statutory waivers of liability.

### IV.

### CONDITIONS PRECEDENT

19.     The Allen Defendants, McKinney Defendants, Amarillo Defendants and the

County Defendants have been given formal written notice of the violations of Wooley's civil

---

rights pursuant to §101.001, et seq., and in particular, §101.101 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE. Alternatively, the Allen Defendants, McKinney Defendants, Amarillo Defendants and the County Defendants each had actual and constructive notice of the events that lead to and or constituted the violations of Wooley's civil rights.

### V.

### STATEMENT OF THE CASE

20.     This is an action for damages sustained by Plaintiff, a citizen of the United States, against various governmental entities, municipalities, police departments, police officers, sheriff and individuals acting as agents of the various police departments, for actions that lead to the false arrest, imprisonment, and malicious prosecution of Wooley.

21.     Defendants are also being sued in their capacity as the supervisory officers responsible for the conduct of the Defendant officers, jailers and nurses for their failure to take corrective action with respect to their subordinates whose ineffective investigative techniques were known.

22.     Defendants are also liable for their failure to assure proper hiring, training and supervision of their personnel or to implement meaningful procedures to correct or discourage lawless official conduct.

23.     Defendants, acting individually and in concert with each other and/or others, under color of statute, ordinance, regulation, custom, or usage and state authority, intentionally, willfully, knowingly, and maliciously deprived Plaintiff of his rights, privileges, and/or immunities secured by the laws and the Constitution of the United States, including, but not limited to his:

A.  Fourth Amendment right to be free from unlawful seizure of his person;

B.  Fourth Amendment and Fourteenth Amendment rights to be secure in his person and freedom from arrest, except on probable cause, supported by oath or affirmation;

C.  Fourth Amendment and Fourteenth Amendment rights to due process of law;

D.  Fourth Amendment and Fourteenth Amendment rights to be free from malicious prosecutions and abuse of process;

E.  Fourth Amendment and Fourteenth Amendment rights to access to the courts;

F.  Fourth Amendment and Eighth Amendment rights to be free from unwarranted mental and physical intrusions; and

G.  Rights pursuant to 42 U.S.C. § and 1983.

24.  Plaintiff Anstett alleges the violation of Wooley's constitutional rights under Title 42 U.S.C § 1983.

25.  Plaintiff Anstett brings this action under Title 42 U.S.C. § 1983 because public officials violated Wooley's constitutional rights. The applicable section of the statute as set forth states:

> "Any person who, under color of any law, statute, ordinance, regulation, custom, or usage of any State, shall subject or cause to be subjected, any person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall, any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding, be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress."

### VI.

### FACTUAL ALLEGATIONS CONCERNING WOOLEY

26.  At all material times alleged herein prior to and on May 16, 2002, Wooley was an unincarcerated, law abiding, and tax paying citizen of the state of Texas.

---

27.     Wooley was employed as a Senior Compliance Manager at Xtera, Inc. ("Xtera") in Allen, Texas.

28.     On May 16, 2002 Wooley resigned from his position at Xtera.

29.     Wooley resigned due to excess job pressures related to a start-up telecommunications company and due to his heart related health conditions.

30.     Wooley was legally able and entitled to terminate his employment at Xtera on May 16, 2002.

31.     Wooley had committed no criminal acts prior to or after his termination from Xtera.

32.     Xtera never reported to law enforcement agencies that Wooley had committed any criminal acts prior to or at the time of his termination from Xtera on May 16, 2002.

33.     Following his resignation, Wooley gathered his personal belongings from his office and in Xtera's parking lot unloaded supplies purchased for Xtera from his truck.

34.     Wooley then traveled directly from Xtera to his home in McKinney, Texas.

35.     Wooley then packed his personal belongings for a much needed vacation of fishing and hunting.

36.     Wooley traveled to Texans Credit Union and withdrew monies in the form of traveler's checks for his trip.

37.     Wooley next filled a prescription for his heart medication at a local pharmacy.

38.     Wooley did not go to the North Central Medical Center ("Medical Center") in McKinney, Texas on May 16, 2002, the scene of the crime.

39.     On or before May 16, 2002 Wooley had never met Amy Wingfield, a nurse fatally wounded and killed at the scene of the crime.

---

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                        PAGE 9

40.     On or before May 16, 2002 Wooley had never met Alisa Stewart, a nurse and co-worker of Amy Wingfield, who was seriously wounded at the crime scene.

41.     Although Wooley had no specific travel plans, he did inform his family and friends that he would be going to either Maine or to points as far north and west as Alaska.

42.     Wooley traveled north on U.S. Highway 75 toward the Oklahoma-Texas border at approximately 12:50 p.m. on May 16, 2002,

43.     Wooley was completely unaware of the shooting that occurred at the Medical Center at approximately 1:33 p.m. May 16, 2002.

44.     The shooting involved a then unidentified male assailant who was believed to have fired a rifle from a long distance at two nurses returning from their lunch break.

45.     Amy Wingfield, a nurse at the Medical Center, died at the scene. Another nurse, Alisa Stewart, was severely wounded and later hospitalized for an extended period of time.

46.     Neither of the victims at the Medical Center had any previous contact with Wooley.

47 .    Wooley was first informed of the shooting through a conversation with one of his former co-workers, Charles Schmucker, as he was driving within the borders of the State of Oklahoma towards Oklahoma City at approximately 5:30 p.m. on May 16, 2002.

48.     Wooley spent the evening of May 16, 2002 in Elk City, Oklahoma ("Elk City").

49.     While in Elk City, Wooley sought out and received medical attention for chest pains at the Great Plains Regional Medical Center.

50.     Wooley was discharged from the Great Plain Regional Medical Center in the early morning of May 17, 2002 with a discharge diagnosis reflecting that he had normal cardiac

enzymes, that he was not suicidal, and that he was rational, appropriate and able to render decisions in his own best behalf.

51.     After discharge, Wooley continued to make his way westward to the northwest United States.

52.     While traveling westward Wooley passed through Amarillo, Texas and checked into the Motel for the night on May 17, 2002.

53.     At check in at the Motel, Wooley asked the desk clerk about the availability of a priest.

## VII.

### FACTUAL ALLEGATIONS CONCERNING MOTEL

54.     Instead of contacting a priest for Wooley or referring him to a priest, the Motel's desk clerk contacted Amarillo PD.

55.     The desk clerk for the Motel informed Amarillo PD that Wooley was a suicide risk.

## VIII.

### FACTUAL ALLEGATIONS CONCERNING AMARILLO PD

56.     Two (2) Amarillo PD officers were dispatched to the Motel where they met with Wooley outside his room.

57.     After inquiring about and learning that Wooley had several weapons, Amarillo PD took possession of his open site AR-15 Bushmaster Rifle (".223 caliber rifle"), Glock handgun (".40 caliber handgun"), a hunting knife and ammunition.  At all material times Wooley was legally in possession of the weapons described herein.

---

58.     Neither the .223 caliber rifle nor the .40 caliber handgun in Wooley's possession had been recently fired.

59.     The .223 caliber rifle was well cared for and properly oiled.

60.     The .40 caliber handgun was well cared for and properly oiled.

61.     When Amarillo PD took possession of the firearms, there was no missing ammunition or spent cartridges for the .223 caliber rifle.

62.     When Amarillo PD took possession of the firearms, there was no missing ammunition or spent cartridges for the .40 caliber handgun.

63.     When Amarillo PD took possession of the firearms, there was no odor of gun powder emanating from the .223 caliber rifle.

64.     When Amarillo PD took possession of the firearms, there was no odor of gun powder emanating from the .40 caliber handgun.

65.     Wooley informed Amarillo PD officers that he was not suicidal and that he had no intention of committing suicide.

66.     Amarillo PD officers insisted that Wooley go to a local hospital and informed him that once he was checked out and released from the hospital he could retrieve his .223 caliber rifle, .40 caliber handgun and hunting knife.

67.     Amarillo PD officers checked Wooley into the Hospital in Amarillo, Texas on May 17, 2002.

68.     Once Wooley was checked into the Hospital, the Amarillo Defendants, the Hospital and Mendoza would not allow him to leave.

69.     Wooley was formally arrested by the Amarillo Defendants at 3:20 p.m. on Saturday, May 18, 2002, approximately one (1) day after being illegally detained.

70.    Wooley was taken by Amarillo PD from the Hospital to the Potter County jail.

71.    Amarillo PD impounded Wooley's 2001 Blue Dodge Ram pick up.

72.    Amarillo PD did not conduct a paraffin test to confirm that Wooley either had or had not fired a weapon in recent days while he was at the Hospital or in the Potter County jail.

73.    Wooley offered to submit to a lie detector test while in the custody of Amarillo PD.

74.    Amarillo PD either rejected the offer to submit to a lie detector test and/or failed to conduct a lie detector test of Wooley to determine his involvement in the murder, if any, of Amy Wingfield.

75.    Wooley remained in the Amarillo PD jail until Monday, May 20, 2002 when he was picked up by the McKinney PD and Vandertuin.

### IX.

### FACTUAL ALLEGATIONS CONCERNING THE HOSPITAL, MENDOZA AND AMARILLO PD

76.    Despite the fact that Amarillo PD and/or Hospital considered Wooley a suicide risk, the Hospital, under the direction of Mendoza, provided Wooley with nominal attention, at best, and provided little, if any, medical care to Wooley.

77.    The Hospital and Mendoza had Wooley held in the Hospital because Wooley was reported to be "… a suspect in a homicide case."

78.    No gunpowder residue was found on Wooley's hands by either Amarillo PD or the Hospital.

79.    The Hospital, under the direction of Mendoza, prevented Wooley from leaving or checking himself out, even though no diagnosis was made that would justify the initial hospitalization.

80.     Wooley began to believe that he was not being medically treated.

81.     Wooley demanded that he be discharged from the Hospital.

82.     Despite Wooley's continued denial that he was suicidal, as recorded in the medical records in the Great Plains Regional Medical Center from earlier in the day, Hospital, Mendoza and Amarillo PD continued to insist that he was suicidal without running or performing any confirmatory tests or examinations.

83.     Amarillo PD, Hospital and Mendoza continued to insert false statements into Wooley's records at the Hospital in order to continue the false and illegal justification to continue to imprison Wooley.

84.     The suicide risk label was used to conceal and hide the false and wrongful imprisonment of Wooley when no criminal charges had been made.

85.     Hospital, Mendoza, and Amarillo PD, in conjunction with McKinney Defendants, falsely imprisoned and held Wooley against his will as McKinney PD attempted to build a case against Wooley based on false and hyped up evidence for the murder of Amy Wingfield.

86.     Wooley was released from the Hospital at 3:20 p.m. on Saturday, May 18, 2002 and immediately taken into custody by the Amarillo Defendants.

## X.

### FACTUAL ALLEGATIONS CONCERNING LAW ENFORCEMENT ACTIVITIES

87.     This tragedy involving the death of Amy Wingfield was the first murder of calendar year 2002 in the city of McKinney, Texas.

88.     There were no reports of crimes or criminal activity occurring at the offices of Xtera on May 16, 2002.

---

89.     Wooley initially became a suspect because of information provided by his employer Xtera to the Allen PD on May 16, 2002, the day he quit his job.

90.     Xtera employees, James Simmons ("Simmons") and Melanie Roark ("Roark") met with and provided information to Allen PD.

91.     At the crime scene at the Medical Center, Sergeant Snow Robertson ("Robertson") of the Allen PD informed Corporal Darlene Jones of the McKinney PD that a possible suspect to the murder of Amy Wingfield was Wooley.

92.     Robertson limited his remarks about Wooley by saying to Darlene Jones that "he saw no real connection between Paul Wooley and the two shot nurses."

93.     Robertson next questioned Darlene Jones to determine if they "had looked at Amy's husband as a suspect" because "Amy's husband was not at work on 05-16-02," the first thing that would and should customarily be done in a murder investigation of involving a spouse.

94.     The information concerning Wooley was then passed on to McKinney PD by Rushing and the Allen PD.

95.     The information gathered from Xtera's employees by the Allen Defendants was relied on by the McKinney, Amarillo and Hospital Defendants without independent or proper investigation.

96.     McKinney Defendants were informed on May 16, 2002 at approximately 3:00 p.m. by an employee of Bob Tomes Ford that a set of keys to a gold Ford Explorer had been dropped off at the dealership by an unidentified woman who stated that they belonged to the vehicle that was driven by the shooter that murdered the nurse Amy Wingfield at the Medical Center.

97.     The gold Ford Explorer had never been owned, leased or operated by Wooley.

---

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                          PAGE 15

98.    The gold Ford Explorer had been borrowed or leased the morning of May 16, 2002 by Raymond Wingfield from a dealership in Pilot Point, Texas.

99.    A simple call to the dealership in Pilot Point, Texas immediately linked the gold Ford Explorer to Raymond Wingfield.

100.    McKinney Defendants knew or should have known on May 16, 2002 that the gold Ford Explorer had been driven by Amy Wingfield's husband.

101.    McKinney Defendants ignored this information that Raymond Wingfield was not at work the day of the shooting and did not investigate the most obvious suspect, the spouse of the deceased wife.

102.    None of the law enforcement Defendants undertook any investigative efforts to corroborate the information received about Wooley.

103.     None of the law enforcement Defendants undertook any investigative efforts to determine the accuracy or reliability of the statements about Wooley.

104.    Following the initial investigation, McKinney PD and Vandertuin executed an Affidavit ("Affidavit") on behalf of the McKinney Defendants in support of an arrest warrant for Wooley.

105.    Before an arrest warrant for Wooley was sought or obtained, Wooley's co-workers informed the Allen and McKinney Defendants that Wooley was not the type of individual that would commit a crime.

106.    Before an arrest warrant for Wooley was sought or obtained, Wooley's co-workers informed the Allen and McKinney Defendants that Wooley "could not hit the broad side of a barn" at close range with a weapon.

---

107.   Before an arrest warrant for Wooley was sought or obtained, his co-workers informed the Allen and McKinney Defendants that they had spoken with him at or about the time of the shootings.

108.   Before an arrest warrant for Wooley was sought or obtained, Wooley's co-workers informed the Allen and McKinney Defendants that Wooley was in Oklahoma at the time of the shootings in McKinney, Texas.

109.   Before an arrest warrant for Wooley was sought or obtained, Wooley's co-workers informed the Allen and McKinney Defendants that Wooley knew nothing of the shootings in McKinney, Texas.

110.   Before an arrest warrant for Wooley was sought or obtained, Wooley's co-workers informed the Allen and McKinney Defendants that if eye witness reports indicated that the assailant was seen running from the crime scene, the assailant could not have been Wooley because of his health conditions and his weight.

111.   The Affidavit was defective on its face as it did not contain facts sufficient to establish the requisite probable cause to arrest or charge Wooley with murder.

112.   The McKinney Defendants did not have probable cause to arrest or charge Wooley with the murder of Amy Wingfield.

113.   The Affidavit executed under oath by Defendant Vandertuin on May 18, 2002 was not notarized contemporaneously on its face with his signature by the notary public.

114.   The Affidavit that was notarized on May 17, 2002 contained falsely contained recitations of facts developed or recorded on May 18, 2002, after the document was allegedly notarized.

115.    Defendant Vandertuin's Affidavit contained false and misleading statements of fact and factually unsupportable conclusions.  More importantly, the McKinney Defendants intentionally excluded exculpatory evidence of Wooley's innocence, including information from Lee Young, a Texas Ranger, that Wooley was not in the area at the time of the shootings according Wooley's mobile phone carrier.

116.    Randy Patterson ("Patterson"), a friend and co-worker of Wooley, told the McKinney Defendants that "Wooley could be kind and generous but could also get aggravated, going from one extreme to another."

117.    The McKinney Defendants intentionally altered this statement to support its affidavit stating that Patterson described his friend as an "extremist."

118.    Patterson denied ever making the statement that Wooley "was an extremist."

119.    Defendant Vandertuin represented in the Affidavit that co-worker Simmons stated that Wooley "had been stockpiling food and guns."

120.    Simmons denied ever making the statement that Wooley "had been stockpiling food and guns."

121.    On May 17, 2002 the McKinney Defendants recovered from the crime scene at the Medical Center at least two (2) bullet fragments from the shooting of May 16, 2002.

122.    The McKinney Defendants sent the bullet fragments to the Department of Public Safety crime lab ("crime lab") in Tyler, Texas.

123.    On May 18, 2002 the McKinney Defendants obtained a search warrant for Wooley's residence on Meadowbrook in McKinney, Texas.

124.    The search warrant was executed on May 18, 2002 and Wooley's house was fully searched.

125.   No weapons were found by the McKinney Defendants in Wooley's house.

126.   No stockpiled supplies of food and/or guns were found by the McKinney Defendants in Wooley's house.

127.   Evidence seized from Wooley's house by the McKinney Defendants did not in any way link Wooley to the shooting on May 16, 2002.   Some of Wooley's personal property was broken by the McKinney Defendants during the search.

128.   Wooley's house was declared a crime scene and locked down by the McKinney Defendants, resulting in Wooley's pet cat being left alone without adequate food and water for six (6) consecutive days.

129.   On May 18, 2002 Lee Young, a Texas Ranger, who, at the request of the McKinney Defendants, had secured information concerning Wooley's mobile phone records and mobile phone usage from Voice Stream.   The records obtained on behalf of the McKinney PD outlined and/or listed the location of mobile phone calls made by Wooley based upon tower locations in Dallas and Tulsa.

130.   The information concerning Wooley's mobile phone records from Voice Stream was provided by Lee Young to the McKinney Defendants on or prior to May 18, 2002 at approximately 12:00 p.m. (noon), according to the investigative records of McKinney PD.

131.   On or before May 18, 2002 at approximately 12:00 p.m. (noon), according to the investigative records of McKinney PD, the McKinney Defendants knew that Wooley's mobile phone records indicated that Wooley was not in the McKinney area at the time Amy Wingfield was shot and killed.   Consequently, Wooley could not physically have been involved in either shooting.

132.    On or before May 18, 2002 the McKinney Defendants knew that at the time Amy Wingfield was murdered Wooley's mobile records indicated that he was in the Red River area of Texas or Oklahoma.  Consequently, Wooley could not physically have been involved in either shooting.

133.    Sergeant Ron Jones of the McKinney PD returned from a vacation to attend a morning tactical meeting at the offices of the McKinney PD on Sunday, May 19, 2002.

134.    At the tactical meeting Sergeant Ron Jones' supervisors informed him that Wooley's mobile phone records exonerated him because they established that Wooley was in the Red River area of Texas or in Oklahoma at the time of the murder of Amy Wingfield.

135.    Prior to the time the McKinney Defendants sought an arrest warrant for Wooley they knew that he was not in the area at the time of the shooting and he could not have been the murderer of Amy Wingfield.

136.    At the time the McKinney Defendants sought an arrest warrant for Wooley they knew that he was not in the area at the time of the shooting and that he could not have been the murderer of Amy Wingfield.

137.    Wooley was arrested by the Amarillo PD on May 18, 2002.

138.    On Sunday, May 19, 2002 Wooley remained in jail in Amarillo, Texas.

139.    Wooley contacted an attorney in Dallas to represent him.

140.    Wooley's attorney contacted the McKinney PD and made arrangements to and did travel to Amarillo to visit Wooley.

141.    On Monday, May 20, 2002 Wooley was transported in a private plane by McKinney PD from Amarillo to McKinney, Texas before he could meet with his attorney.

---

**PLAINTIFF'S ORIGINAL COMPLAINT**                                      PAGE 20

142.    On May 20, 2002 McKinney PD and Vandertuin traveled from McKinney to Amarillo to pick up Wooley and return him to McKinney.

143.    While McKinney PD and Vandertuin were in Amarillo they sought the assistance of the Amarillo PD and the Potter County District Attorney's office to secure a search warrant for Wooley's 2001 Blue Dodge Ram pick up truck.

144.    After going over the probable cause for the search warrant, it was determined that McKinney PD did not have enough probable cause for a search warrant.

145     On information and belief, the probable cause provided by the McKinney Defendants was the same probable cause information contained in the Arrest and Search Warrant affidavits executed under oath by McKinney PD and Vandertuin.

146.    Prior to and at the time the McKinney Defendants traveled to Amarillo to pick up Wooley to transport him back to Collin County they knew that he could not have been the murderer of Amy Wingfield.

147.    At the time the McKinney Defendants traveled to Amarillo to pick up Wooley and transport him back to Collin County they knew that he could not have been the murderer of Amy Wingfield.

148.    Upon his arrival in McKinney, Wooley was placed in the Collin County jail.

149.    McKinney Defendants received information on May 20, 2002 from the crime lab in Tyler, Texas that the caliber of bullets fired from the weapon of the unknown assailant was fired from a .270 caliber weapon.

150.    McKinney Defendants knew that the only weapons that Wooley had in his possession were a .223 caliber rifle and .40 caliber handgun.

151.    Wooley's rifle would only fire a .223 caliber bullet, a bullet that is noticeably smaller by visual inspection than a .270 caliber bullet.

152.    Based upon the information from the crime lab the bullet fragments recovered did not match the caliber of any of the weapons in Wooley's possession.

153.    The McKinney and Collin County Defendants determined that Amy Wingfield was shot with and killed by a .270 caliber bullet.

154.    The McKinney and Collin County Defendants determined that Alisa Stewart was shot with a .270 caliber bullet.

155.    Wooley never owned nor possessed any weapon that was capable of firing a .270 caliber bullet.

156.    Even though Wooley did not own or possess a .270 caliber weapon, he was not released from jail on Monday, May 20, 2002.

157.    On May 20 and 21, 2002 the McKinney Defendants took statements from employees at Xtera's offices.

158.    While taking statements, the McKinney Defendants requested the Xtera employees to write intentionally false or misleading statements for the purpose of implicating Wooley in the murder of Amy Wingfield.

159.    At the time the statements of Xtera employees were taken, the McKinney Defendants knew that Wooley was not involved in the murder of Amy Wingfield.

160.    Since the statements from the Xtera employees did not implicate Wooley in the Wingfield murder, and because they had nothing harmful to say about Wooley, Sergeant Ron Jones and Corporal Darlene Jones of McKinney PD began to suggest facts to be placed included

in the witness statements about Wooley that would implicate him in the crime or just simply make him look bad.

161.    On information and belief, Sergeant Ron Jones of the McKinney PD advised Chris Ryan ("Ryan"), the Chief Financial Officer of Xtera on Monday, May 20, 2002 that the cellular phone records cleared Wooley of the crime that Wooley was not in the area and he could not have been the shooter.

162.    The McKinney Defendants did not believe that Wooley was cooperative because after his arrest he did not give a statement or submit to a lie detector test.

163.    The McKinney Defendants in their rush to judgment to charge, arrest and convict Wooley did not take the time to learn that Wooley had agreed to submit to a lie detector test in Amarillo.

164.    The McKinney PD announced at a press conference on Wednesday, May 22, 2002 that it had determined that the weapons in Wooley's possession had not been used in the offense.

165.    The McKinney Defendants obtained this information as early as May 20, 2002, if not sooner, yet they kept Wooley incarcerated.

166.    While in the Collin County jail, Wooley was arraigned before the court and held initially without bond.

167.    Prior to his release, the Court set Wooley's bond at $300,000.00.

168.    Wooley was financially incapable of posting a $300,000.00 bond.

169.    Wooley was arraigned before the court.

170.    Wooley was held without proper and adequate medication to treat his health conditions.

171.    McKinney Defendants did not conduct any meaningful interviews of Raymond Wingfield until May 22, 2002, the fourth day of Wooley's incarceration in the Collin County Jail.

172.    McKinney PD announced at a press conference given on May 22, 2002 that Wooley's cellular phone records indicated that Wooley could not have been in McKinney at the time of the shootings.

173.    The McKinney Defendants did not release Wooley after the press conference where they announced that he was not in McKinney at the time of the shootings.

174.    On May 22, 2002 Raymond Wingfield the husband of Amy Wingfield confessed to the murder of his wife and the shooting of Alisa Stewart.

175.    Thirty (30) minutes after the confession by Raymond Wingfield, Wooley was release from the Collin County jail.

176.    In total Wooley was falsely imprisoned for two (2) separate days by Motel, Hospital, Mendoza and the Amarillo Defendants.

177.    Wooley spent six (6) separate days in jail, in Potter County and Collin County.

178.    Upon his release, Wooley was informed by the McKinney Defendants that all criminal charges against him would be dropped.

179.    The Defendants never apologized to Wooley.

180.    At all relevant times from May 16 through May 23, 2002 Wooley's cellular phone records and all of the other readily available and attainable evidence established his lack of involvement in the crime and his undeniable innocence.

---

181.    The failure of the Defendants to follow the established policies and procedure in place, individually, collectively and in concert with each other, resulted in the false and wrongful imprisonment of Wooley.

## XI.

### FACTUAL ALLEGATIONS CONCERNING THE COLLIN COUNTY DEFENDANTS

182.    During the four (4) separate days of incarceration in the Collin County jail, Wooley was subjected to wide stigmatization as a crazy, extremist killer through the media.

183.    While incarcerated in the Collin County jail, jailers had a deliberate indifference to Wooley's physical and mental state.

184.    At the Collin County jail, Wooley was placed alone in a cell under suicide watch.

185.    While on suicide watch, Wooley was provided with only a meager gown to cover him and a thin foam mat to sleep on.

186.    The type of gown provided to Wooley did not completely cover him and effectively left his penis and rear end exposed at all times to Collin County nurses and jailers, some of whom were women.

187.    While at the Collin County jail, Wooley was continually subjected to loud music that resulted in sleep deprivation and an inability to sleep.

188.    The temperatures in Wooley's cell at the Collin County jail were intentionally maintained in the low 60's during his four (4) separate days of incarceration, which made it difficult for him to sleep.

189.    While at the Collin County jail, Wooley was continually taunted that he was a murderer and that he was going to fry for what he did.

190.    While at the Collin County jail, Wooley was informed by the Collin County Defendants that he would be sent to the site of all federal executions, Terre Haute, Indiana, for a mental evaluation.

191.    In an effort to completely humiliate Wooley, the female nurses and jailers openly joked in his presence about the shape and size of his penis.

192.    While at the Collin County jail, Wooley was continually taunted, often times by jailers and nurses, about his sexuality and his physique, some of whom were women.

193.    While at the Collin County jail, Wooley was deprived of adequate medication and medical treatment.

194.    While at the Collin County jail, Wooley was continually subjected to inhumane and disgusting treatment including but not limited to inadequate or no toilet paper, no medication or treatment for diarrhea, and no soap to wash himself.

195.    Wooley's treatment in the Collin County jail according to his psychiatrist fell so totally outside what is normal that it was tantamount to torture, and was the worst case of inmate mistreatment the psychiatrist was aware of.

196.    After being held in the Collin County jail, for four (4) separate days and held up to constant and repetitious public ridicule, Wooley was finally released on May 23, 2002, thirty (30) minutes after Raymond Wingfield signed a confession.

## XII.

### FACTUAL ALLEGATIONS CONCERNING THE ALLEN AND MCKINNEY DEFENDANTS

197.    Following Wooley's release, as a result of the wrongful arrest of Wooley and the repeated publication of his name and arrest through media outlets, Wooley suffered a

---

stigmatization in the community that prohibited him from rejoining society and obtaining gainful employment.

198.    After his release from jail, Wooley's credit cards and ATM would not authorize credit transactions when he attempted to use them.

199.    After his release from jail, Wooley's ability to do internet banking and bill payment were terminated.

200.    After his release from jail, Wooley's stress level and depression were so greatly affected and increased that he felt as though he had no good reason to get out of bed in the morning.

201.    After his release from jail, when Wooley would enter restaurants in the area people would leave.

202.    When he entered banks in the area police would appear.

203.    When he entered Starbuck's coffee shops, people would leave and police would appear.

204.    After his release from jail, Xtera, Wooley's former employer, hired off duty Allen PD officers to protect their company from Wooley because of the false report from the McKinney PD to the Allen PD that Wooley had threatened the lives of Xtera employees. Allen PD knew or should have known that no threats had been made by Wooley, but Allen PD accepted the employment engagement of Xtera in order to its police officers additional off-duty pay.

205.    After his release from jail, Wooley's lack of employment landed him in inexpensive transient motels and forced him to stay with friends and family.

206.    After his release from jail, Wooley became distraught over the stigmatization he suffered in the community.

207.    The once highly sought after hi-tech employee and productive member of this community was reduced to a fearful, frightened and intimidated individual who could no longer even support himself as a result of the actions of the Defendants.

208.    In order to survive, Wooley had to sell virtually all of his belongings of value, including his house.

209.    Wooley could not afford the cost of his needed medications following his arrest.

210.    Wooley continued to anguish over and to suffer greatly from the affects of his arrest, incarceration and stigmatization as a result of the actions of the Defendants.

211.    In October of 2002 WFAA-TV Channel 8 published a news story about Raymond Wingfield and the murder of his wife, Amy Wingfield.  Instead of displaying a photograph of Raymond Wingfield, Wooley's picture and his perpetrator's walk in jail clothes and handcuffs was prominently shown to all of the resident of the Dallas-Fort Worth metroplex.  Wooley simply never recovered from the harm and damage done to him by the actions and conduct of the Defendants.

212.    The actions and conduct of the Defendants eventually killed Wooley.

213.    Wooley died unemployed and alone in a motel room on or about December 15, 2003.  Wooley's body was discovered by a motel employee.

### XIII.

### VIOLATIONS OF WOOLEY'S CIVIL RIGHTS – ALLEN DEFENDANTS

214.    The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 213 as if set forth verbatim.

*Allen PD violated their own policies and customs when they failed to*
*properly substantiate information from Xtera and failed to properly*
*train and supervise its officers in investigative techniques*

215.    Allen PD should be held liable for the false arrest and imprisonment of Wooley because they failed to document, substantiate, corroborate, or adequately investigate information concerning Wooley that was given to them by Xtera.

216.    Allen PD's failures are the result of a lack of training and supervision which is in violation of the city's polices and customs.

217.    Moreover, Allen PD's failure to perform a reasonable investigation into the false information resulted in false charges being filed against Wooley.

218.    Wooley was wrongfully imprisoned because of Allen PD's failure to properly investigate false information prior to contacting McKinney PD.

219.    Rushing is the policy maker that had actual or constructive knowledge of the Allen PD's policies and customs.

220.    As a result of Defendant, Allen PD's actions, Wooley was deprived of the protection of the laws in violation of 42 U.S.C. §1983 and the rights guaranteed by the Fourth Amendment to the Constitution of the United States.

*Rushing's failure to supervise and train members of*
*Allen PD to properly collect and investigate information*
*was a result of his deliberate indifference*

221.    Rushing failed to train or adequately supervise officers of the Allen PD in investigative techniques that would have prevented the dissemination of false information that lead to Wooley's arrest and imprisonment.   It is obvious that uncorroborated and/or false information can lead to the false arrest and imprisonment and prosecution of an individual. Rushing was deliberately indifferent to the need for training and supervision of officers under his

command.  Rushing's indifference resulted in the direct violation of Wooley's constitutional rights protected under the Fourth, Eighth, and Fourteenth Amendments and 42 U.S.C. § 1983.

*The ultimate arrest and detention of Wooley was*
*without justification or probable cause due to Allen PD's failure*
*to substantiate information and perform a proper investigation*

222.    Allen PD failed to insure that a full investigation into the allegations against Wooley was made prior to forwarding information to the McKinney PD.

223.    A reasonably prudent person with reasonable caution would have done a more thorough investigation before forwarding information to the McKinney PD.

224.    Wooley's civil rights were clearly violated when Allen PD provided false information to McKinney PD that resulted in the false arrest, false imprisonment and malicious prosecution of Wooley.

*Rushing is not entitled to qualified immunity*

225.    The Court should find that Rushing is not entitled to assert qualified immunity protection.

226.    Even if this Court finds that Rushing is eligible to assert qualified immunity, Rushing has waived his immunity.

227.    Rushing's failure to properly train and supervise officers to investigate or substantiate information prior to its dissemination resulted in a violation of Wooley's civil rights protected under the Fourth, Eighth and Fourteenth Amendments.

228.    Wooley's rights under the Fourth, Eighth and Fourteenth Amendments are recognized constitutional rights.

229.    Rushing clearly violated Wooley's rights when he contributed to the false arrest, imprisonment, and malicious prosecution of Wooley.  Rushing, therefore, should not be afforded immunity protection from liability.

230.    Plaintiff sues for actual and exemplary damages together with prejudgment and post judgment interest and costs of court.

## XIV.

### VIOLATIONS OF WOOLEY'S CIVIL RIGHTS – MCKINNEY DEFENDANTS

231.    The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 230 as if set forth verbatim.

*McKinney PD violated its own policies and customs when it failed to properly supervise and train officers in investigative techniques*

232.    Defendants McKinney PD, Kowalski and Vandertuin, failed to sufficiently consider exculpatory evidence in Wooley's favor.

233.    The actions and conduct of Defendants McKinney PD, Kowalski and Vandertuin in their failure to document, substantiate, corroborate or investigate were contrary to McKinney PD's own internal rules, policies and procedures, and were intentional, malicious, reckless, and in bad faith.

234.    On May 20, 2002, a McKinney PD detective brought the bullet fragments recovered at the crime scene to the Department of Public Safety laboratory in Tyler, Texas.

235.    The result of that test revealed that the projectile caliber seized from Wooley did not match that of the killer.

236.    The McKinney PD had exculpatory information that they failed to act upon at least three (3) days prior to Wooley's release.

---

**PLAINTIFF'S ORIGINAL COMPLAINT**                                      PAGE 31

237.    McKinney had knowledge of the violations of the policies and customs which were the driving force in the unlawful arrest, detention and malicious prosecution of Wooley.

238.    As a result of the McKinney Defendants actions and conduct Wooley was deprived of the protection of the laws in violation of 42 U.S.C. §1983 and the rights guaranteed by the Fourth, Eighth and Fourteenth Amendment to the Constitution of the United States.

### *Kowalski, with deliberate indifference, failed to train and/or adequately supervise members of McKinney PD in the handling and investigation of evidence*

239.    Police officers of the McKinney PD had knowledge of facts that would have exonerated Wooley and lead the police to the true assailant.

240.    The McKinney PD, however, because of their lack of training and supervision failed to properly handle exculpatory information and evidence.

241.    As a result, Wooley's constitutional rights were violated.

242.    Kowalski failed to train McKinney PD officers to investigate information provided by witnesses at the crime scene.

243.    Had the McKinney PD officers been properly trained in proper investigative techniques and information dissemination, Wooley's rights would not have been violated.

244.    McKinney PD failed to investigate the fact that the vehicle described near the crime scene by a witness was in the possession of or belonged to Wingfield's husband.

245.    McKinney PD then failed to release Wooley even after they knew that the true identity of the killer was Raymond Wingfield.

246.    It should have been obvious that keys from a vehicle rented by Wingfield matched the witness' description of the vehicle given by the crime scene witness.

247.    As a result of the failure of Kowalski to train and supervise his officers, Wooley

was deprived of his constitutional rights under the Fourth, Eighth and Fourteenth Amendments and 42 U.S.C. §1983.

### *Kowalski is not entitled to qualified immunity*

248.    Kowalski has waived immunity from liability in this case and in addition to his waiver, alternatively, he is not entitled to assert qualified immunity protection.

249.    Kowalski has admitted that he had preliminary information as early as May 18, 2002 that indicated Wooley may have been at a different location.

250.    Further, Kowalski had information on May 20, 2002 that the bullets from the assailant's gun did not match the weapons confiscated from Wooley.

251.    Vandertuin and Kowalski violated Wooley's constitutional rights to liberty guaranteed under the Fourth Amendment.

252.    Kowalski and Vandertuin, therefore, should not be afforded qualified immunity because their actions constituted a clear violation of Wooley's civil rights.

### *Vandertuin executed an invalid affidavit*
### *in support of an arrest warrant for Wooley*
### *therefore, providing no probable cause for his arrest*

253.    Vandertuin should not be entitled to assert qualified immunity as a defense in this case.

254.    Even if Vandertuin were eligible to assert qualified immunity status he has waived immunity protection.

255.    Vandertuin's execution of an affidavit to support the arrest of Wooley was defective.

256.    The affidavit on its face did not contain facts sufficient to establish probable cause for the commission of murder for which Wooley was charged.

---

257.     Vandertuin misstated testimony from witnesses to support the McKinney PD's theory that Wooley was the killer.

258.     Specifically, Patterson told police that "Wooley could be kind and generous but could also get aggravated, going from one extreme to another."

259.     Vandertuin turned this statement in the affidavit into describing Wooley as an "extremist."

260.     Vandertuin also misstated in the affidavit that Simmons said that Wooley "had been stockpiling food and guns."

261.     Simmons denied under oath ever giving Vandertuin such a statement and no stockpiles of weapons or food were ever found or ever existed.

262.     Moreover, many of the facts contained in the affidavit referring to the May 18, 2002 date were not notarized contemporaneously with the signature of a notary on May 18, 2002.

263.     The arrest warrant affidavit, furthermore, did not contain facts sufficient to establish the elements of the crime for which Wooley was falsely charged.

264.     McKinney Defendants had no probable cause to obtain a search warrant and to search Wooley's residence.

265.     McKinney Defendants had no probable cause to arrest and to incarcerate Wooley.

266.     McKinney Defendants' actions violated clearly protected constitutional rights and, therefore, he should not be entitled to qualified immunity.

267.     Plaintiff Anstett sues for actual and exemplary damages together with prejudgment and post judgment interest and costs of court.

---

## XV.

### VIOLATIONS OF WOOLEY'S CIVIL RIGHTS – AMARILLO DEFENDANTS

268.     The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 267 as if set forth verbatim.

### *The Amarillo PD failed to properly train and supervise officers to substantiate, corroborate or investigate false information in violation of the policies and customs*

269.     The Amarillo PD ignored the fact that the weapons found in Wooley's possession did not match the caliber of weapon used in the McKinney shooting.

270.     Wooley informed the police the he had not fired any weapon recently and offered to voluntarily have Amarillo PD perform a paraffin test on his hands.

271.     Amarillo PD rejected Wooley's offer to take the paraffin test and also rejected Wooley's subsequent offer to take a polygraph test.

272.     The false charges against Wooley, his wrongful imprisonment, and the false information were perpetuated by Amarillo PD's failure to document, substantiate, corroborate or investigate the information they conveyed to the other Defendants.

273.     Amarillo PD's actions and conduct in their failure to document, substantiate, corroborate or investigate were contrary to Amarillo PD's internal rules, policies and procedures (customs), and were intentional, malicious, reckless, and in bad faith.

274.     Amarillo PD's actions were a result of their deliberate indifference to the civil rights violations that resulted from their lack of training and supervision.

275.     Wooley's rights were guaranteed by the Fourth Amendment to the Constitution of the United States and in violation of 42 U.S.C. §1983.

---

276.    Amarillo PD's actions were direct violations of Wooley's civil rights for which it should be held liable.

### Neal failed to properly train and supervise officers for the Amarillo PD which resulted in the false arrest and imprisonment of Wooley

277.    Amarillo PD officers were not properly trained and supervised in proper investigative techniques when they held Wooley for questioning and used Hospital personnel as agents to detain Wooley.

278.    Wooley was detained in the Hospital at the request of Amarillo PD, while McKinney PD gathered evidence for Wooley's arrest.

279.    Neal was deliberately indifferent to the need for training police officers in dealing with potential murder and suicide suspects.

280.    Neal's lack of training and supervision resulted in a direct violation of Wooley's constitutional rights.  It should have been obvious to Neal that his failure to properly train and supervise his officers would have resulted in civil rights violations.

281.    Wooley's civil right's protected under the Fourth Amendment and 42 U.S.C. §1983 were violated because of Neal's lack of training and supervision to Amarillo PD officers.

### Amarillo PD's arrest and detention of Wooley was unjustified and without probable cause.  Neal is not entitled to qualified immunity

282.    Upon receiving information from the Motel the Amarillo PD then detained Wooley on the suspicion of suicide.

283.    When Wooley was taken into custody by Amarillo PD his weapons became evidence and were held as such by Amarillo PD.

284.    Even though the Amarillo PD determined that he was not a suicide risk they

insisted that he check into the Hospital.

285.    Amarillo PD had no probable cause to detain Wooley on the suspicion of suicide or any other criminal violation.

286.    While Wooley was detained in Hospital, Amarillo PD received information from McKinney PD that Wooley was a suspect in the McKinney shooting.

287.    Amarillo PD detained Wooley upon receiving information provided by McKinney PD.  Wooley was then subsequently wrongfully arrested.

288.    Amarillo PD violated Wooley's civil rights when they arrested him without probable cause in violation of Wooley's Fourth Amendment rights and 42 U.S.C. §1983.

289.    Plaintiff Anstett sues for actual and exemplary damages together with prejudgment and post judgment interest and costs of court.

## XVI.

### VIOLATIONS OF WOOLEY'S CIVIL RIGHTS – COLLIN COUNTY DEFENDANTS

290.    The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 289 as if set forth verbatim.

*Collin County Sheriff's Department failed to*
*properly train and supervise its jailers and nurses*
*in violation of its own policies and customs*

291.    Collin County and Box failed to train and supervise jailers and nurses to properly handle inmate incarceration.

292.    Box had actual or constructive knowledge of the County's policies and customs.

293.    Collin County's and Box's failure to properly train and supervise jailers and nurses was the moving force and the proximate cause of the violations of Wooley's civil rights.

---

294.    Collin County's failure to train and supervise was contrary to Collin County's own internal rules, policies and procedures, and were intentional, malicious, reckless, and in bad faith.

### *Box failed to properly train and supervise nurses and jailers in deliberate indifference to resulting constitutional rights violations*

295.    Sheriff Box's responsibilities include the supervision and training of county jailers and nurses.

296.    After his wrongful arrest Wooley was incarcerated and placed in the Collin County Jail.

297.    Wooley's civil rights were violated when jailers and nurses were deliberately indifferent to the medical needs of Wooley.

298.    Jailers and nurses also taunted Wooley with threats of receiving the death penalty.

299.    Wooley was held alone in a cell while jailers and nurses inflicted mental abuse upon Wooley as described hereinabove.

300.    Box's lack of training and supervision of jail staff caused a violation of Wooley's civil rights.

301.    Box was deliberately indifferent to the need for supervision and training of Collin County jail and nurse staff.

302.    Box, therefore, should be held liable for violation of Wooley's civil rights under the Eighth and Fourteenth amendments to the United States Constitution and 42 U.S.C. § 1983.

### *Collin County Jailers and Nurses were deliberately indifferent to Wooley's medical needs, cruel and inhumane*

303.   Collin County Jailers and Nurses failed to provide adequate medical attention to Wooley when he was detained in the Collin County Jail.

304.   Collin County Jailers and Nurses failed to provide Wooley with any mental or physical medical treatment.

305.   Collin County Jailers and Nurses not only failed to provide medical attention to Wooley, their intentional conduct exacerbated an existing mental and physical condition.

306.   The actions and conduct of the Collin County Jailers and Nurses deprived Wooley of the protection of the laws and the rights, privileges and immunities under the laws and Constitution of the United States.

307.   In particular, the rights to be secure in their person and property, to be free from mental intrusions, and to due process of law, which are guaranteed by the Eighth and Fourteenth Amendments to the Constitution of the United States and in violation of 42 U.S.C. §1983.

308.   Plaintiff Anstett sues for actual and exemplary damages plus prejudgment and post judgment interest and costs of court.

## XVII.

### VIOLATIONS OF WOOLEY'S CIVIL RIGHTS – MOTEL DEFENDANT

309.   The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 308 as if set forth verbatim.

---

### *Motel filed a false report that led to*
### *the wrongful detention and incarceration*
### *of Wooley in violation of his civil rights*

310.    Wooley checked into the Motel on his way to the Northwest United States.

311.    In response to Wooley's request for the name of a priest, the desk clerk called the Amarillo PD and reported that Wooley was suicidal.

312.    The Motel's report resulted in the wrongful detention of Wooley at the Hospital and his eventual incarceration in the Collin County Jail.

313.    The actions of the Defendant, Motel deprived Wooley of the protection of the laws and the rights under the Fourth Amendment of the Constitution and laws in 42 U.S.C. §1983.

314.    Plaintiff Anstett sues for actual and exemplary damages together with prejudgment and post judgment interest and costs of court.

## XVIII.

### VIOLATIONS OF WOOLEY'S CIVIL RIGHTS – HOSPITAL DEFENDANTS

315.    The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 314 as if set forth verbatim.

### *The Hospital and Mendoza, as agents of the Amarillo PD, unlawfully*
### *imprisoned Wooley in violation of his civil rights*

316.    The Hospital and Mendoza unlawfully detained Wooley in violation of his civil rights.

317.    The Hospital and Mendoza were acting as agents for the Amarillo PD when Wooley was admitted to the Hospital.

---

**PLAINTIFF'S ORIGINAL COMPLAINT**                                          PAGE 40

318.    The Hospital and Mendoza prohibited Wooley from leaving in violation of his civil rights.

319.    The Hospital and Mendoza unlawfully detained Wooley when they had previously determined that Wooley was not a suicide risk and they had no other reason to hold him.

320.    In concert with the Amarillo PD, the Hospital held Wooley for no valid reason.

321.    As a result of Defendant Hospital's actions, Wooley was deprived of the protection of the laws in violation of 42 U.S.C. §1983 and the rights guaranteed under the Fourth Amendment of the Constitution.

### *Hospital's and Mendoza's deliberate indifference*
### *caused Wooley substantial damage and injury*

322.    While Wooley was being held in the Hospital he was not given sufficient medication or treatment for his alleged mental problems that were the basis of his detention.

323.    The Hospital and Mendoza provided little if any care to Wooley but instead acted as a substitute for the City jail at the request of the Amarillo PD so that the McKinney PD could build their wrongful case against Wooley.

324.    Wooley requested to leave the hospital on several occasion.

325.    The Hospital and Mendoza prevented Wooley from leaving. Mendoza cited as a reasons for continuing to detain Wooley because he was "...a suspect in a homicide case."

326.    Because they were acting as an agent for the Amarillo PD the Hospital and Mendoza violated Wooley's Eighth and Fourteenth Amendment rights under the Constitution of the United States and laws in violation of 42 U.S.C. §1983.

---

327.   Plaintiff Anstett sues for actual and exemplary damages together with prejudgment and post judgment interest and costs of court.

## XIX.

### SPOILATION OF EVIDENCE

328.   Plaintiff realleges and fully incorporates herein by reference the allegations contained in paragraphs 1 – 327 as if set forth verbatim.

329.   Plaintiff through counsel made a specific written request for the production of document to the Allen, Amarillo, McKinney and County Defendants pursuant to Tex. Gov. Code, Title 5, Chapter 552 during calendar year 2002.   Much of the documentation requested was not produced and attorney general opinions were sought by many of the Defendants.   In the concluding paragraph of the request, counsel for Plaintiff stated:

> "Please do not destroy any of the information requested and take all necessary steps to preserve and safe guard such information as same is evidence."

Plaintiff now has reason to believe and does believe that evidence relating to the criminal investigation and the criminal charges filed against Wooley have been destroyed, altered or modified by some or all of the municipalities, police officers, chiefs of police, sheriff and/or county governmental entities.

330.   Plaintiff has reason to believe and does believe that evidence material to the present allegations and supportive of Plaintiff's pleadings has been destroyed, altered or modified based upon the representations of attorneys representing the McKinney Defendants.

331.   Defendants had been placed on notice of Plaintiff's intention to seek a remedy for the violations of Wooley's civil rights.

332.   Defendants' notice was actual and constructive yet the documents were destroyed preventing discovery of documents essential to the prosecution of Plaintiff's case.

333.   Intentional spoliation of evidence relevant to a case should raise a presumption that the evidence destroyed would have been favorable to the Plaintiff and unfavorable to the spoliators.  The jury should therefore be instructed that the spoliation of evidence was intentional and an inference can be drawn that the evidence would have been unfavorable to the spoliators.

## XX.

### STATE LAW CLAIMS

### *This Court has jurisdiction over state law claims*

334.   Plaintiff realleges and fully incorporates herein by reference the allegations contained in paragraphs 1 – 333 as if set forth verbatim.

335.   Federal court jurisdiction over pendent state law claims is now governed by title 28 U.S.C. §1367, which provides, in relevant part, that:

> ". . . in any civil action in which the district court['s] have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution."

336.   Title 42 of the United States Code section 1988 incorporates the Texas survival and wrongful death statute to provide full remedies for violations of constitutional rights.

337.   Official immunity from state law claims in Texas is essentially the same as qualified immunity under federal law.

### *Wrongful Death*

338.   The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 337 as if set forth verbatim.

---

339.   All named Defendants are responsible for the death of Wooley because of their wrongful acts, conduct, neglect, carelessness, unskillfullness, or utter disregard for Wooley.

340.   Such actions and conduct by the Defendants and/or their agents directly lead to and was the sole and/or proximate cause of Wooley's incarceration and his eventual wrongful death.

341.   Plaintiff sues for actual and exemplary damages plus prejudgment and post judgment interest and costs of court proximately caused by the actions and conduct of the Defendants named herein.

### *Causes of Action Under the Survival Statute*

342.   The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 341 as if set forth verbatim.

343.   A cause of action for personal injury to the health, reputation, or person of an injured person does not abate because of the death of the injured person or because of the death of a person liable for the injury. TEX. CIV. PRAC. & REM. CODE ANN. §71.021 (Vernon 2002).

344.   Wooley's personal injury action survives his death and can be asserted by the Plaintiff who is the legal representative of the Wooley Estate.

345.   The action survives against the liable person and the person's legal representatives.

346.   Plaintiff sues for actual and exemplary damages plus prejudgment and post judgment interest and costs of court proximately caused by the actions and conduct of the Defendants named herein.

## XXI.

### NEGLIGENCE

*All named Defendants acted negligently*
*in providing and handling information that resulted*
*in the wrongful arrest and incarceration of Wooley*

347.    The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 346 as if set forth verbatim.

348.    All Defendants had a duty to Wooley, especially the inn keeper, Motel, to provide and handle information properly.

349.    Defendants violated their duty of care when Wooley was wrongfully detained and incarcerated.

350.    The Defendants' extreme, inhumane and outrageous actions and conduct as described herein caused Wooley severe emotional distress and mental anguish from which he never recovered and from which he ultimately died on December 15, 2003.

351.    Plaintiff sues for actual and exemplary damages plus prejudgment and post judgment interest and costs of court proximately caused by the actions and conduct of the Defendants named herein.

## XXII.

### FALSE ARREST AND IMPRISONMENT

*Defendants caused the wrongful arrest and*
*the imprisonment of Wooley*

352.    The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 351 as if set forth verbatim.

---

**PLAINTIFF'S ORIGINAL COMPLAINT**

353.    The Defendants either caused the detainment and/or willfully detained Wooley in the Collin County jail for four (4) separate days.

354.    Wooley was jailed without his consent and without the required authority of law.

355.    In reality, Wooley was not detained for committing the murder of Amy Wingfield but rather because the Defendants, in particular the McKinney Defendants, did not believe that Wooley was cooperating with their investigation.

356.    The Hospital and Mendoza willfully detained and falsely imprisoned Wooley in Amarillo, Texas, while acting as agents for the Amarillo and McKinney Defendants, without his consent and without the authority of law when they refused to allow him to leave the hospital.

357.    The Defendants' extreme, inhumane and outrageous actions and conduct as described herein caused Wooley severe emotional distress and mental anguish from which he never recovered and from which he ultimately died on December 15, 2003.

358.    Plaintiff sues for actual and exemplary damages together with prejudgment and post judgment interest and costs of court proximately caused by the actions and conduct of the Defendants named herein.

## XXIII.

### DEFAMATION

*Defendants slandered Wooley when
they addressed the public through the media*

359.    The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 358 as if set forth verbatim.

360.    The Defendants made statements to the media stating that Wooley was responsible for the murder of Amy Wingfield and the attack on Alisa Stewart.

---

361.    The statements were false and published to third persons.

362.    The Defendants are therefore liable for slandering Wooley.

363.    The Defendants' extreme, inhumane and outrageous actions and conduct as described herein caused Wooley severe emotional distress and mental anguish from which he never recovered and from which he ultimately died on December 15, 2003.

364.    Plaintiff sues for actual and exemplary damages together with prejudgment and post judgment interest and costs of court proximately caused by the actions and conduct of the Defendants named herein.

### Defendants libeled Wooley with their press release to the public

365.    The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 364 as if set forth verbatim.

366.    The Defendants published a written press release charging Wooley with the murder of Amy Wingfield and the attack on Alisa Stewart.

367.    McKinney Defendants published private facts about Wooley's mental illness to the media.

368.    The Defendants are therefore liable for libeling Wooley.

369.    The Defendants' extreme, inhumane and outrageous actions and conduct as described herein caused Wooley severe emotional distress and mental anguish from which he never recovered and from which he ultimately died on December 15, 2003.

370.    Plaintiff sues for actual and exemplary damages plus prejudgment and post judgment interest and costs of court proximately caused by the actions and conduct of the Defendants named herein.

---

## XXIV.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*McKinney and Collin County Defendants intentionally
inflicted emotional distress and mental anguish upon Wooley*

371.    The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 370 as if set forth verbatim.

372.    The McKinney and Collin County Defendants acted intentionally and in the alternative recklessly when they failed to release Wooley after exculpatory evidence came to their attention.

373.    McKinney and Collin County Defendants detained Wooley and/or kept him incarcerated up to and until thirty (30) minutes after they had a signed confession from Wingfield.

374.    McKinney and Collin County Defendants' conduct was extreme and outrageous, and constituted cruel and unusual punishment.

375.    Wooley suffered emotional damage and injury as direct and proximate result of the actions and conduct of the Defendants that resulted in his wrongful arrest and incarceration.

376.    The McKinney and Collin County Defendants taunted Wooley by saying that he would receive the death penalty if he did not confess to the murders, when they knew he had not committed the murder.

377.    The Defendants' extreme, inhumane and outrageous actions and conduct as described herein caused Wooley severe emotional distress and mental anguish from which he never recovered and from which he ultimately died on December 15, 2003.

---

378.    Plaintiff sues for actual and exemplary damages plus prejudgment and post judgment interest and costs of court proximately caused by the actions and conduct of the Defendants named herein.

## XXV.

### MALICIOUS PROSECUTION

***All municipal, county and governmental Defendants and persons
acting as agents for the municipalities and counties are
liable for the malicious prosecution of Wooley***

379.    The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 378 as if set forth verbatim.

380.    All of the Defendants assisted directly and/or indirectly in the commencement of the investigation of the murder of Amy Wingfield that led to the filing utterly false charges and unsubstantiated murder charges against Wooley.

381.    As a result of the actions and conduct of the Defendants, the murder charges filed against Wooley resulted in his incarceration for a period of six separate (6) days.

382.    Wooley was subsequently released from jail because the charges were dropped against him.

383.    Probable causes for the detention, arrest and incarceration of Wooley never existed.

384.    Wooley should not have been arrested, detained or held against his will.

385.    The murder charges filed against Wooley had no basis in fact.

386.    The murder charges filed against Wooley had no basis in law.

387.    The false charges were filed and pursued with malice by the Defendants.

---

388.    The Defendants' extreme, inhumane and outrageous actions and conduct as described herein caused Wooley severe emotional distress and mental anguish from which he never recovered and from which he ultimately died on December 15, 2003.

389.    Plaintiff sues for actual and exemplary damages together with prejudgment and post judgment interest and costs of court proximately caused by the actions and conduct of the Defendants named herein.

## XXVI.

### CONSPIRACY

390.    The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 389 as if set forth verbatim.

391.    Defendants and others joined together to accomplish an unlawful purpose and/or accomplish a lawful purpose by unlawful means.

392.    The Defendants' extreme, inhumane and outrageous actions and conduct as described herein caused Wooley severe emotional distress and mental anguish from which he never recovered and from which he ultimately died on December 15, 2003.

393.    Plaintiff sues for actual and exemplary damages together with prejudgment and post judgment interest and costs of court proximately caused by the actions and conduct of the Defendants named herein.

## XXVII.

### JOINT AND SEVERAL LIABILITY

394.    The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 393 as if set forth verbatim.

395.    Defendants and others acted in concert to violate Wooley's State and Federal constitutional and statutory rights, therefore the Defendants are jointly and severally liable for the damages recovered by Plaintiff.

396.    Additionally, Defendants, with the specific intent to do harm to Wooley, acted in concert with each other and others to engage in conduct described above.

397.    Defendants are therefore jointly and severally liable for the damages recovered by Plaintiff.

## XXVIII.

### VICARIOUS LIABILITY

398.    The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 397 as if set forth verbatim.

399.    Defendants are vicariously liable for the acts of their officers, agents, servants, principals, vice principals, borrowed servants, employees or representatives because of the employer-employee and/ or principal/vice principal relationship, ostensible agency and/or agency by estoppel, and/or borrowed servant doctrine.

## XXIX.

### ACTUAL DAMAGES – PERSONAL INJURIES

400.    The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 399 as if set forth verbatim.

401.    As a direct and proximate result of the actions, conduct and inactions of all of the Defendants, Plaintiff has suffered physical and mental injuries prior to his death, and such injuries resulted in his untimely death.

402. Wooley, therefore, has been damaged in the sum of not less than Five Million Dollars ($5,000,000.00).

## XXX.

### ACTUAL DAMAGES – PROPERTY DAMAGES

403. The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 402 as if set forth verbatim.

404. As a direct and proximate result of the actions, conduct and inactions of all of the Defendants, Plaintiff has suffered property damages, and has therefore been damaged in the sum of not less than Fifty Thousand Dollars ($50,000.00).

## XXXI.

### ACTUAL DAMAGES – WAGE EARNING CAPACITY

405. The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 404 as if set forth verbatim.

406. As a direct and proximate result of the actions, conduct and inactions of all of the Defendants, Plaintiff has suffered a wage loss, and has therefore been damaged in the sum of not less than Two Hundred Ten Thousand Dollars ($210,000.00).

407. As a direct result of the actions of the Defendants, Plaintiff suffered a loss of wages in the sum of Two Hundred Ten Thousand Dollars ($210,000.00).

## XXXII.

### ACTUAL DAMAGES – WAGE EARNING CAPACITY

408. The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 407 as if set forth verbatim.

409.    As a direct and proximate result of the actions, conduct and inactions of all of the Defendants, Plaintiff has suffered a permanent impairment of his employment and earning capacity, and has therefore been damaged in the sum of not less than Two Million Dollars ($2,000,000.00).

## XXXIII.

### EXEMPLARY DAMAGES

410.    The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 409 as if set forth verbatim.

411.    The actions of the Defendants were done intentionally, recklessly, maliciously and/or with gross negligence, entitling Plaintiff to punitive or exemplary damages.

412.    Defendants, individually and/or acting in concert with each other and/or others, are criminally responsible parties as defined in the TEXAS PENAL CODE § 7.02 and as such jointly and severally liable for any and all exemplary damages pursuant to TEXAS CIVIL PRACTICE & REMEDY CODE § 41.005.

413.    Defendants, with the specific intent to do harm to Wooley, acted in concert with each other and others to engage in conduct described in § 41.008 of the TEXAS CIVIL PRACTICE & REMEDY CODE, including but not limited to subsection (c)(12).  As such, the "caps" described in §41.008(b) of the TEXAS CIVIL PRACTICE & REMEDY CODE do not apply.

414.    The actions and the conduct of all of the Defendants were malicious and in complete disregard of the rights of Wooley and therefore Plaintiff is entitled to recover punitive damages against said Defendants in the sum of not less than Twenty Million Dollars ($20,000,000.00).

---

## XXXIV.

### ATTORNEY'S FEES

415.    The Plaintiff realleges and fully incorporates herein by reference the allegations of paragraphs 1 – 414 as if set forth verbatim.

416.    Plaintiff has retained the undersigned firm of attorneys to represent him in the prosecution of the foregoing claims.

417.    Pursuant to 42 U.S.C. §1983, Plaintiff is entitled to recover his reasonable and necessary attorney's fees.

**WHEREFORE, PREMISES CONSIDERED** Plaintiff prays for judgment jointly and severally as to all of the Defendants as follows:

A.     Actual damages in an amount not less than of Seven Million Two Hundred Sixty Thousand Dollars ($7,260,000.00);

B.     Punitive damages in an amount not less than Twenty Million Dollars ($20,000,000.00);

C.     Reasonable attorney's fees;

D.     Court costs;

E.     Prejudgment interest;

F.     Post judgment interest; and

G.     Such other and further relief to which the Plaintiff may show himself to be justly entitled and for which he will ever pray.

---

**Dated: May 11, 2004**

Respectfully submitted,

THE LYNCH LAW FIRM

By: _____

**Jeffrey S. Lynch**
Texas Bar No.1272750
**Matthew R. McCarley**
Texas Bar No. 24041426

13740 Midway Road
Suite 702
Dallas, Texas 75244-4351
(972) 991-0000 – Telephone
(972) 991-0006 – Facsimile

and

**Michael Burrage**
Oklahoma Bar No. 1350
BURRAGE LAW FIRM
P.O. Box 1727
Durant, Oklahoma 74702-1727
(580) 920-0700 – Telephone
(580) 920-0702 - Facsimile

**ATTORNEYS FOR PLAINTIFF,
JOHN ANSTETT, AS INDEPENDENT
ADMINISTRATOR OF THE ESTATE OF
PAUL WOOLEY, DECEASED**

---